IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN GOODMAN, )
)
        Plaintiff, )
)
v. ) No. 2:03-cv-1650
) Judge Thomas M. Hardiman
UNITY TOWNSHIP, PENNSYLVANIA, )
)
        Defendant. )

## OPINION

### I. Introduction

Plaintiff John Goodman (Goodman) filed this disability discrimination action against Defendant Unity Township, Pennsylvania (Unity or Township), alleging wrongful termination under Pennsylvania law, as well as a failure to accommodate his disability in violation of the Rehabilitation Act, 29 U.S.C. §701 *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951 *et seq.* Presently before the Court is Defendant's Motion for Summary Judgment on all claims asserted in Plaintiff's Second Amended Complaint.

### II. Factual Background

The facts of record in this case are voluminous. As such, the Court shall only recount the material facts that are germane to the grounds for its decision. Goodman's employment with Unity Township began on May 18, 1987, when he was hired to work as an Operator on the

Township's road crew.[1] In 1989, approximately two years into his employment with Unity, Goodman injured his right wrist while operating a wood chipper on the job. In 1992, while under the care of Dr. Glen Buterbaugh, Goodman underwent the first of several surgeries in an attempt to repair the injured wrist. While out of work because of this injury, Goodman received workers' compensation benefits. In March or April of 1994, Goodman returned to work briefly in a temporary light-duty capacity, but required further surgery on his wrist in May of 1994. After recovering from that surgery, Goodman attempted to return to work again in a light-duty capacity. In October of 1994, Dr. Buterbaugh provided a letter which limited Goodman to part-time work, four hours per day.

While undergoing treatment for his wrist injury, Goodman also began to suffer facial lesions as early as 1993. In January of 1995, Dr. Nancy Nieland-Fisher diagnosed Goodman with chronic cutaneous lupus erythematosus, which rendered him unable to work in the sun. In March of 1995, Dr. Nieland-Fisher reiterated in writing Goodman's diagnosis of lupus and that he needed to avoid intense sunlight because of the disease.

On March 31, 1995, Dr. Buterbaugh ordered Goodman off of work altogether, and he has not worked for Unity since that date. Accordingly, Goodman collected workers' compensation benefits from 1995 until 1998. At some time thereafter, Goodman brought a workers' compensation case against the Township, which was settled in November of 2001 when Goodman agreed to a lump sum settlement of $73,000 after receiving approximately $199,000 in

---

[1] The parties dispute the proper title and essential functions of the position that Goodman held with Unity. For the sake of convenience, the Court will refer to Goodman's position as that of "Operator," despite the Township's contention that the proper title for the position is "equipment operator/laborer."

2

indemnity benefits.

Goodman has sought treatment for his lupus condition from various physicians since 1995, all of whom agree that he cannot work in direct sunlight. In August of 1998, Dr. Michele Petri of Johns Hopkins Hospital provided a diagnosis of systemic lupus erythematosus (SLE) and avascular necrosis of both hips. The avascular necrosis has required Goodman to undergo two hip replacement surgeries, the first of which occurred in July of 1999.

In November of 2002, however, prior to Goodman's second hip replacement surgery, Dr. Petri released Goodman to return to work with restrictions. By letter dated November 21, 2002, Dr. Petri stated that Goodman could perform light duty work for 10-30 hours a week, as long as the work did not involve sun exposure. Dr. Petri also stated that the avascular necrosis of Goodman's hip prevented him from "any long standing or walking over any distance."

It is undisputed that in December of 2003, an Operator position became available when a Unity Township Operator died. Goodman has requested accommodation from the Township by allowing him to return to his prior position and operate equipment that has tinted windows and air-conditioning. Goodman also suggested that the Township install automatic roll-out tarps to shield him from the sun while allowing him to work. Unity has not accommodated Goodman to date, asserting that operating equipment is but a small portion of the Operator job, and Goodman's inability to perform outdoor laborer functions renders him unable to perform the essential functions of this position even with the accommodations he requested.

### III. Legal Standard

Summary judgment is required on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986); *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). An issue is "material" only if the factual dispute "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"Summary judgment procedure is properly regarded not as a disfavorable procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted). The parties have a duty to present evidence; neither statements of counsel in briefs nor speculative or conclusory allegations satisfy this duty. *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The nonmoving party must make a showing sufficient to establish the existence of each element essential to his case on which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322-23. The mere existence of some evidence in support of the nonmoving party, however, will not suffice to deny a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson*, 477 U.S. at 249.

## IV. Analysis

### A. *Disability Discrimination Claims*

The United States Court of Appeals for the Third Circuit has held that claims under the PHRA are to be analyzed utilizing the same standards that apply to ADA claims. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Likewise, the Third Circuit has held that "[w]hether suit is filed under the Rehabilitation Act or under the [ADA], the substantive standards for determining liability are the same." *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995). Therefore, the Court shall analyze Goodman's claims under the substantive standards of the ADA, but the Court's findings shall apply equally to Goodman's PHRA and Rehabilitation Act claims.

Under the ADA, an employer cannot discriminate "against a qualified individual with a disability because of the disability of such individual with regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). Discrimination comes in two forms: (1) subjecting the employee to an adverse employment action motivated by prejudice or fear; or (2) failing to provide a reasonable accommodation for a disability. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

The analytical burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), first used in Title VII discrimination suits, applies to ADA discrimination claims as well. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Walton v. Mental Health Ass'n. of Southeastern Pennsylvania*, 168 F.3d 661, 668 (3d Cir. 1999). Therefore, to establish a *prima facie* case of ADA discrimination, Goodman must establish: (1) he is a

disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). If he establishes a *prima facie* case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). If the employer can articulate such a reason, the burden shifts back to the employee, who must produce "sufficient evidence to raise a genuine issue of fact as to whether the employer's proffered reasons were not its true reasons for the challenged employment actions." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir. 1996). In this case, Defendant Unity Township argues that Goodman cannot establish a *prima facie* case because he has demonstrated neither that he is "disabled" nor that he is a "qualified individual with a disability" under the ADA.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. §12102(2). The Supreme Court has noted that "the terms substantially and major, as used in the ADA provision defining disability . . . need to be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197-98 (2002). Similarly, the Third Circuit Court of Appeals has written: "[t]he purpose of the ADA would be undermined if protection could be claimed by those whose relative severity of impairment was widely shared." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir. 1996).

The phrase "substantially limits" means "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the

condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Mondzelewski v. Pathmark Stores*, 162 F.3d 778, 782-83 (3d Cir. 1998) (citing 29 C.F.R. §1630.2(j)(1)(I), (ii)). In assessing whether a major life activity has been substantially limited, a court should consider the following factors: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of [the impairment] or resulting from the impairment. *Id.* at 783 (citing 29 C.F.R. §1630.2(j)(2)(I)-(iii)). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working," although this list is not exhaustive. *Id.* at 783 n.2.

With regard to the major life activity of working, a court must look to whether an individual is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. §1630.2(j)(3)(I). As this regulation suggests, a court must consider the individual's training, skills, and abilities to evaluate "whether the particular impairment constitutes for the particular person a significant barrier to employment." *Mondzelewski*, 162 F.3d at 784 (citation omitted); *see also* 29 C.F.R. Pt. 1630, App. §1630.2(j) (determination whether individual is limited in working must be conducted on case-by-case basis). Because a "person's expertise, background, and job expectations are relevant factors in defining the class of jobs used to determine whether an individual is disabled," the court must consider the effect of the impairment on the employment prospects of that individual with all of

his or her relevant personal characteristics. *Id.* (citations omitted). Thus, a substantially limiting impairment for one individual may not be substantially limiting for another individual with different characteristics.

Finally, the Third Circuit follows the two-step analysis recommended by the EEOC's interpretive guidelines for determining whether a plaintiff is substantially limited in his ability to perform a major life activity. *Mondzelewski*, 162 F.3d at 783. First, a court must determine whether the plaintiff is significantly limited in a life activity other than working. Only if a plaintiff is not limited in a life activity other than working should the court consider whether the plaintiff is substantially limited in the major life activity of working.

> 1. *Disputed Issues of Material Fact Exist Regarding Whether Goodman is "Disabled" under the ADA.*

It is undisputed that Goodman suffers from SLE, and was first diagnosed with this disease no later than 1995. Likewise, it is undisputed that Goodman suffers from avascular necrosis of both hips, which resulted in two hip replacements. However, a mere diagnosis of a physical impairment does not render one disabled under the applicable statutes. Rather, Goodman must demonstrate that his impairments substantially limit a major life activity.

Goodman relies primarily on the November 21, 2002 letter from Dr. Petri to establish that he is limited in the major life activity of walking. In that letter, Dr, Petri states, albeit somewhat vaguely, that Goodman's condition "prevents . . . walking over any distance." The Court notes that this letter was prepared prior to Goodman's second hip replacement in 2003. Defendant has not provided the Court with deposition testimony of Dr. Petri, and thus offers no evidence that clarifies the meaning of the November 21, 2002 letter. Drawing all inferences in favor of the

non-moving party, as the Court must when ruling on a motion for summary judgment, the letter can be read to impose a serious restriction of Goodman's walking ability. Thus, the Court finds that a genuine issue of material fact exists as to the extent to which Goodman's ability to walk is limited by his physical impairment.[2]

> 2. *Disputed Issues of Material Fact Exist Regarding Whether Goodman is a Qualified Individual With a Disability Under the ADA.*

The ADA defines a "qualified individual with a disability" (QID) as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires." 42 U.S.C. §12111(8). As such, a determination of whether Goodman is QID necessarily involves an examination of what job functions are "essential" to his former position of Operator.

> a. *Essential Functions of Operator Position are in Dispute.*

The parties strongly disagree regarding the essential functions of the Operator position. Unity Township has presented testimony and evidence that an Operator also assists with general laborer duties associated with Township projects, such as laying pipe. The Township further presented testimony that an Operator only spends between 10% and 20% of his time operating

---

[2] In his responsive briefing, Goodman also asserts that he is limited in the major life activities of standing, stooping, bending, lifting, and going outside during daytime. Defendant objects to the consideration of these major life activities because they were not asserted in Plaintiff's Second Amended Complaint. Because there is a genuine issue of material fact regarding Goodman's ability to walk, which was listed as a major life activity in the Second Amended Complaint, the Court need not address the issue of whether it is proper for Goodman to assert new major life activities at this time. Any such arguments can be addressed by motions *in limine* prior to trial.

9

equipment, with the rest of the time spent performing the laborer functions outside of the equipment.

Goodman disputes that any laborer functions are essential to his prior position of Operator, relying upon the job description in Unity's collective bargaining agreement, which provides:

> Job Description – Operator
> Operate all equipment of the township such as trucks, loaders, backhoes, graders, oilers, vehicles and other machinery but not limited to these. Perform such other duties as labor, repair work on equipment described above but not limited to these and within the ability of the operator to perform.

Goodman contends that the final sentence of the job description should be read to mean that an operator only need perform the laborer functions that are *within his ability to perform*, rendering them non-essential.

The Third Circuit has held that "[w]hether a particular function is essential 'is a factual determination that must be made on a case by case basis [based upon] all relevant evidence.'" *Deane v. Pocono Medical Ctr*, 142 F.3d 138, 148 (3d Cir. 1998) (en banc) (quoting 29 C.F.R. §1630.2(n)). Within the past ten days, the Court of Appeals reaffirmed that resolving conflicting evidence regarding what functions of a job are essential is the sole province of the jury. *See Turner v. Hershey Chocolate USA*, No. 04-4674, 2006 U.S. App. LEXIS 6836, *23-25 (3d Cir. Mar. 20, 2006). The Township's argument regarding the essential functions of the Operator position conflicts with the language of its own collective bargaining agreement regarding the same position. This presents a disputed issue of material fact which precludes the Court from

determining whether Goodman is QID at the summary judgment stage, and the question must be submitted to a jury.

      b.  *The Reasonableness of the Accommodation Sought by Goodman is in Dispute.*

Unity also argues that Goodman's claims must fail as a matter of law because the accommodation he sought, namely, being permitted to work in equipment with tinted windows and air-conditioning, was "unreasonable." According to Unity, allowing Goodman only to operate equipment would be equivalent to creating a new job for him, which is not required by the ADA. However, Unity's argument in this regard is premised upon its own interpretation of the essential functions of the Operator position, which would require substantial outdoor labor. Because the Township's premise is a disputed issue of material fact for the reasons discussed *supra*, the Township's legal argument regarding the accommodation must fail.

The Court agrees that should Unity persuade a jury that the laborer functions of the Operator position are essential, it will be difficult for Goodman to show that any reasonable accommodation existed that would allow him to perform those duties. Should Goodman succeed in convincing a jury that the laborer functions were not essential, however, then his requested accommodations would appear to allow him to perform the job. As such, disputed issues of material fact exist regarding whether Goodman's requested accommodation was reasonable, precluding summary judgment.

B.  *Wrongful Termination Under Pennsylvania Law.*[3]

In addition to his statutory disability discrimination claims, Goodman is pursuing a claim under Pennsylvania law for wrongful termination. Goodman alleges that his termination was an act of retaliation for his having filed a workers' compensation claim against Unity Township. Pennsylvania law recognizes a wrongful termination cause of action for workers' compensation retaliation. *Shick v. Shirey*, 716 A.2d 1231, 1238 (Pa. 1998). To state a *prima facie* case for wrongful discrimination, Goodman must establish: (1) that he engaged in protected activity; (2) that he suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) that there is a causal connection between his protected activity and the employer's adverse action. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).

---

[3] Unity also claims entitlement to summary judgment on Goodman's state law claim for wrongful termination because he is already pursuing statutory remedies for his termination. In support of this proposition, Unity cites *Holmes v. Pizza Hut of Am., Inc.*, No. 97-4967, 1998 U.S. District LEXIS 13787 (E.D. Pa. Aug. 31, 1998). The Township's reliance on *Holmes* for this proposition is misplaced. In *Holmes*, the District Court for the Eastern District of Pennsylvania refused to allow a plaintiff to assert a wrongful termination claim under Pennsylvania law while concurrently seeking relief under the ADA, Family Medical Leave Act, and PHRA. However, the plaintiff in *Holmes* attempted to bring a wrongful termination claim that invoked the same interests and provided relief for the same violations that were already being addressed by her statutory claims. Unlike *Holmes*, Goodman does not assert both statutory and common law claims that he was terminated because of his disability. Rather, Goodman asserts that he was discriminated against because of his disability under the ADA, PHRA and Rehabilitation Act, and was wrongfully terminated in retaliation for having filed a workers' compensation claim. Workers' compensation retaliation is not addressed by the ADA, PHRA, or Rehabilitation Act. As such, Goodman's wrongful termination claim seeks to protect public policy interests different from those addressed by his statutory claims.

Here, the first two elements of Goodman's *prima facie* case are satisfied. Goodman filed a workers' compensation claim, and has not been permitted to return to work. However, Goodman has marshaled no evidence from which a reasonable jury could infer a causal relationship between his workers' compensation claim and the Township's refusal to allow him to return to his job or another similar position. The only evidence to which Goodman cites in support of a causal connection is the deposition testimony of former Unity Township Supervisor Tom Yazvec. However, Yazvec's testimony does not suggest that Unity had any animus towards Goodman or any other employee who made workers' compensation claims after an injury. Rather, the testimony makes clear that under the union contract, even if an injured worker was replaced while he was on workers' compensation leave, the least senior employee would be terminated to make room for the injured worker to return upon his recovery. Such evidence is insufficient to state a *prima facie* case of wrongful termination under Pennsylvania law. Therefore, summary judgment in favor of Unity Township is proper regarding Goodman's wrongful termination claim.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted as to Count IV of Plaintiff's Second Amended Complaint asserting claims for wrongful termination under Pennsylvania law. Defendant's Motion for Summary Judgment will be denied as to the remainder of Plaintiff's Second Amended Complaint.

An appropriate Order follows.

March 30, 2006

*Thomas M. Hardiman*
Thomas M. Hardiman
United States District Judge

cc: All counsel of Record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN GOODMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:03-cv-1650 |
| ) | Judge Thomas M. Hardiman |
| UNITY TOWNSHIP, PENNSYLVANIA, ) | |
| ) | |
| Defendant. ) | |

## ORDER

AND NOW, this 30th day of March, 2006 upon consideration of Defendant's Motion for Summary Judgment it is hereby

ORDERED that Defendant's Motion for Summary Judgment (Doc. No. 52) is GRANTED IN PART and DENIED IN PART. Defendant's motion as to Count IV of Plaintiff's Second Amended Complaint asserting claims for wrongful termination under Pennsylvania law is GRANTED. Defendant's Motion for Summary Judgment is DENIED as to the remainder of Plaintiff's Second Amended Complaint.

BY THE COURT:

_____
Thomas M. Hardiman
United States District Judge

cc: All Counsel of Record